```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
```

LOCAL NO. 503 OF THE GRAPHIC
COMMUNICATIONS CONFERENCE OF THE
INTERNATIONAL BROTHERHOOD OF
TEAMSTERS,

        Plaintiff,

  -v-                         17-cv-6605 (MAT)
                                  **DECISION AND ORDER**

CASCADES CONTAINERBOARD PACKAGING -
LANCASTER, *a division of Cascades,
New York, Inc.*,

        Defendant.

## I. Introduction

Plaintiff Local No. 503 of the Graphic Communications Conference of the International Brotherhood of Teamsters ("Local 503" or "plaintiff") commenced the instant action on August 29, 2017, alleging that defendant Cascades Containerboard Packaging - Lancaster ("Cascades" or "defendant") is violating a collective bargaining agreement by refusing to arbitrate a grievance related to the reduction of wages for four bargaining unit members. Now pending before the Court is plaintiff's motion for a preliminary injunction (Docket No. 11), in which plaintiff asks the Court to compel the parties to arbitrate the relevant grievance. For the reasons set

forth below, plaintiff's request for a preliminary injunction is denied.

## II. Background

The following facts are taken from the briefs, affidavits, and exhibits submitted by the parties.

Local 503 is an unincorporated labor organization located in Rochester, New York. Cascades is a domestic corporation that manufactures packaging materials.

On or about October 2, 2016, Cascades entered into a collective bargaining agreement (the "Agreement") with a labor organization known as Local No. 27 of the Graphic Communications Conference of the International Brotherhood of Teamsters ("Local 27"). Article 5 of the Agreement sets forth a grievance procedure that ultimately culminates in arbitration.

Local 27 was associated with the Graphic Communications Conference of the International Brotherhood of Teamsters (the "International"), an international labor organization with affiliates throughout the United States. Before the events that underlie the instant action, Local 27 was placed into

2

trusteeship while the International decided whether it could continue as a viable local labor organization. On or about March 15, 2017, the International ended the trusteeship of Local 27 and administratively transferred its assets and liabilities to Local 503, effective April 1, 2017. Plaintiff maintains that, as a result of this administrative transfer, "[Local 503] became the exclusive bargaining representative for the bargaining unit of [Cascades'] employees, and [Local 503] became responsible for administering grievances related to [the Agreement]." Docket No. 11-1 at ¶ 15.

On or about August 3, 2017, Michael Stafford, the president of Local 503, filed a grievance with Cascades related to the unilateral reduction of wages for four bargaining unit members (the "Grievance"). Cascades denied the Grievance on or about August 8, 2017. On or about August 18, 2017, Local 503's counsel provided Cascades' counsel with a list of proposed arbitrators, purportedly pursuant to Section 5.04 of the Agreement. On or about August 25, 2017, Cascades' counsel sent an email to Local 503's counsel taking the position that

3

Local 503 was not a party to the Agreement and that Cascades therefore had no obligation to arbitrate the Grievance with Local 503.

Plaintiff subsequently commenced the instant action on August 29, 2017, seeking "an order . . . directing [Cascades] to proceed to an arbitration of the Grievance in accordance with the Agreement. . . ." (Docket No. 1 at 5). On October 26, 2017 (nearly two months after the complaint was initially filed), plaintiff filed the instant motion for a preliminary injunction.

**III. Discussion**

    **A. Legal Standard**

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24(2008); *see also Hanson Trust PLC v. ML SCM Acquisition, Inc.*, 781 F.2d 264, 273 (2d Cir. 1986)(a preliminary injunction is "one of the most drastic tools in the arsenal of judicial remedies"). "In order to obtain a preliminary injunction, a party must demonstrate: 1) that it is subject to irreparable harm; and 2) either a) that it will likely succeed on the

4

merits or b) that there are sufficiently serious questions going to the merits of the case to make them a fair ground for litigation, and that a balancing of the hardships tips 'decidedly' in favor of the moving party." *Genesee Brewing Co. v. Stroh Brewing Co.*, 124 F.3d 137, 142 (2d Cir. 1997).

In this case, as defendant points out, plaintiff seeks a mandatory injunction, which "alter[s] the status quo by commanding some positive act." *Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*, 60 F.3d 27, 34 (2d Cir. 1995). In particular, plaintiff asks the Court to affirmatively require defendant to engage in arbitration. "[T]his distinction is important because [the Second Circuit has] held that a mandatory injunction should issue "only upon a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of preliminary relief." *Id.; see also Doninger v. Niehoff*, 527 F.3d 41, 47 (2d Cir. 2008) ("When the movant seeks a 'mandatory' injunction — that is, as in this case, an injunction that will alter rather than maintain

5

the status quo — she must meet the more rigorous standard of demonstrating a 'clear' or 'substantial' likelihood of success on the merits.).

Moreover, the relief sought by plaintiff in the instant motion is the same as the ultimate relief sought in the complaint - that is, a court order compelling defendant to arbitrate the Grievance. "It is well-established that the purpose of a preliminary injunction is not to award the movant the ultimate relief sought in the suit but is only to preserve the status quo. . . . This principle weighs against granting Plaintiff's motion for a preliminary injunction. . . ." *City of Newburgh v. Sarna*, 690 F. Supp. 2d 136, 175 (S.D.N.Y. 2010) (internal quotation omitted); *see also Triebwasser & Katz v. AT & T Co.*, 535 F.2d 1356, 1360 (2d Cir. 1976) (reversing issuance of preliminary injunction that "would in effect give the plaintiffs substantially the ultimate relief they seek ... before there has been any trial of the issues" and explaining that "the normal function of the preliminary injunction

is to maintain the status quo pending a full hearing on the merits").

B. **Likelihood of Success on the Merits**

Plaintiff has not shown, as it must to be granted a mandatory injunction, a clear likelihood of success on the merits. In particular, the Court is unable to conclude, based on the record currently before it, that Local 503 is authorized to enforce the terms of the Agreement.

Plaintiff relies upon *General Teamsters Union Local No. 439 v. Sunrise Sanitation Services, Inc.*, 2006 WL 1153577 (E.D. Cal. Apr. 28, 2006) for the proposition that a "new representative" may enforce the terms of a collective bargaining agreement against an original signatory. As a threshold matter, this Court is of course not bound by an unpublished decision from a district court in California. Moreover, *Sunrise Sanitation* is factually inapposite. In that case, the members of the original union voted "to merge their existing bargaining representative with petitioner's international organization." *Id*. at *1. Moreover, the

7

National Labor Relations Board had "certified petitioner as the bargaining agent for all full-time and regular part-time drivers at [respondent's] facility. . . ." *Id*. (internal quotation omitted).

This factual distinction is crucial, because a successor union's right to enforce the terms of a collective bargaining agreement arises from the proposition that "the representative of the employees is chosen by the employees and may from time to time be changed by the employees whether the employer happens to approve of the choice or not. And . . . the right of the employees to have their grievances arbitrated in accordance with procedures hammered out between the employer and a properly recognized bargaining agent may not be abrogated by the employer merely because the employees subsequently see fit to change their agent." *Cincinnati Newspaper Guild, Local 9 v. Cincinnati Enquirer, Inc.*, 863 F.2d 439, 445–46 (6th Cir. 1988). In other words, an employer may not refuse to abide by the terms of a collective bargaining agreement simply because the employees subsequently decide to change their agent.

This so because a union negotiates a collective bargaining agreement as an agent, not as a principal, and the employees in the bargaining unit are ultimately the real parties in interest. *Id*. at 445.

In this case, however, the Court lacks any information regarding the process by which Local 503 allegedly assumed Local 27's assets and liabilities, including what role, if any, the members of the bargaining unit played in that process. Notably, plaintiff has not provided the Court with any documentation whatsoever from which it could assess and interpret the scope of the administrative transfer, nor has it set forth any of the terms and conditions thereof. Under these circumstances, this Court simply cannot conclude that plaintiff has met its burden of showing a clear likelihood of success on the merits of its claims, as is necessary for issuance of a mandatory injunction.

The Court is not persuaded by plaintiff's contention that discovery of additional information related to the administrative transfer between Local 27 and Local 503 would result in impermissible interference in internal

9

union deliberations by Cascades. The Federal Rules of Civil Procedure provide ample avenues for the protection of sensitive materials, including the possibility of entry of a protective order or submission of materials for *in camera* review by the Court. Moreover, plaintiff's contentions in this regard are circular - it argues that the Court should enter a preliminary injunction because Cascades has not submitted evidence contesting plaintiff's characterization of the administrative transfer, but then contends that Cascades is not entitled to any discovery that would permit it to obtain such evidence.

To be clear, the Court does not foreclose the possibility that plaintiff may in fact ultimately be able to demonstrate that it is entitled to enforce the terms of the Agreement, in connection with a motion for summary judgment or otherwise. However, at this stage of the proceedings, the Court has nothing before it regarding the circumstances and conditions of the transfer of Local 27's assets and liabilities except for a single, broad paragraph in Mr. Stafford's affidavit. The Court cannot

award plaintiff the ultimate relief it seeks without, at a minimum, a more complete record to substantiate its request.

   C.  **Irreparable Harm**

Because plaintiff has not shown a clear likelihood of success on the merits, the Court need not and does not consider whether plaintiff has made the required showing of a likelihood of irreparable harm.  The Court notes, however, that plaintiff delayed and waited two months after filing the complaint to seek a preliminary injunction.  "A district court should generally consider delay in assessing irreparable harm," *Tom Doherty Assocs.*, 60 F.3d at 39, and a months-long delay "runs counter to plaintiff's insistence that the alleged harm is actual or imminent."  *T-Mobile Ne. LLC v. Water Auth. of W. Nassau Cty.*, 249 F. Supp. 3d 680, 684 (E.D.N.Y. 2017);  *see also Weight Watchers Int'l, Inc. v. Luigino's, Inc.*, 423 F.3d 137, 144 (2d Cir. 2005) ("We have found delays of as little as ten weeks sufficient to defeat the presumption of irreparable harm that is essential to the issuance of a preliminary injunction.").

Plaintiff has offered no explanation for this delay and it is therefore unlikely that, even if the Court were to reach this issue, it could conclude that plaintiff had established its likelihood of suffering irreparable harm.

**IV. Conclusion**

For the reasons set forth above, plaintiff's motion for a preliminary injunction (Docket No. 11) is denied without prejudice.

**ALL OF THE ABOVE IS SO ORDERED.**

s/Michael A. Telesca

MICHAEL A. TELESCA
United States District Judge

Dated: December 19, 2017
Rochester, New York